# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GARY LEE GRIFFIN, | ) |
|       Petitioner, | ) |
| vs. | ) Case No. 05-0317-CV-W-ODS-P |
| MIKE KEMNA, | ) |
|       Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS

Petitioner, Gary Lee Griffin, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on April 4, 2005, seeking to challenge his 1999 convictions and sentences for first degree murder, armed criminal action, and first degree robbery, which were entered in the Circuit Court of Lafayette County, Missouri.

Petitioner raises fourteen grounds for relief: (1) trial court error in failing to strike Venireperson Betty Shada for cause; (2) trial court error in admitting photographic evidence of the victim that was irrelevant and prejudicial; (3) trial court error in sustaining the prosecution's objection to defense counsel's question concerning "true love" during voir dire; (4) trial court error in overruling petitioner's objection to testimony concerning the purchase of a wedding band; (5) ineffective assistance of counsel for failing to supply the trial court with competent evidence of the juvenile laws of South Dakota; (6) ineffective assistance of trial counsel for failing to file a motion to suppress petitioner's statements and for failing to object to the admission of those statements into evidence during trial; (7) ineffective assistance of trial counsel for failing to introduce the testimony of Jeff Lawhon and Arthur Griffin; (8) ineffective assistance of counsel for failing to object to improper statements made by the prosecution during closing argument;

(9) ineffective assistance of trial counsel for: (a) failing to object to the prosecutor's argument concerning "blood release" from the victim; (b) failing to have that argument stricken from the record; and (c) failing to request a curative instruction regarding that argument; (10) ineffective assistance of trial counsel for failing to object to the prosecution's improper emotional appeal made during closing argument, for failing to strike those comments from the record, and for failing to request a curative instruction; (11) ineffective assistance of trial counsel for telling the jury about other murders in the Kansas City area during closing argument; (12) ineffective assistance of trial counsel for questioning a prosecution witness regarding the size of the victim's grave when that issue had been the subject of a defense motion in limine, which had been sustained by the trial court; (13) ineffective assistance of direct appeal counsel for failing to raise on direct appeal trial court error in denying petitioner's motion for judgment of acquittal at the close of the state's evidence and motion for judgment of acquittal at the close of all evidence; and (14) that the State of Missouri's "preponderance of the evidence" standard for ineffective assistance of counsel claims violates the Constitution and the United States Supreme Court's holding in Strickland v. Washington, 466 U.S. 668 (1984).

Respondent does not state a position as to whether petitioner's grounds for relief are exhausted. However, respondent contends that Grounds 1, 2, 3, and 4 are without merit, that Grounds 5, 6, 7, 8, 9, 10, 11, 12, and 13 are procedurally defaulted, and that Ground 14 is not cognizable on habeas corpus review.

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> Mr. James Mason, Ms. Tara Greathouse, Mr. Gary Griffin, and the deceased, Mr. Jesse McGinnis, were friends who worked together at a nursing home. On December 18, 1998, Mr. Griffin and Ms. Greathouse picked up Mr. Mason from school, and Mr. Mason noticed that Mr. Griffin appeared frustrated. He told Mr. Mason that he had a fight with Mr. McGinnis that morning and had killed him.

When Mr. McGinnis did not come home that evening, his family called his place of employment and spoke with Sabrina Miller. Ms. Miller had told her supervisor about some threats Mr. Griffin made against Mr. McGinnis because of his comments about Mr. Griffin's girlfriend, Ms. Greathouse. The following morning, Mr. Mason contacted the police and told them what Mr. Griffin had disclosed to him regarding the murder and led the police to the scene of the crime. The police found Mr. McGinnis' body covered with sticks and branches in a wooded area.

The police requested that law enforcement agencies nationwide to be on the lookout for Mr. Griffin and Ms. Greathouse. The police located the suspects when they used a debit card at a shoe store in South Dakota. When police questioned the clerk at the shoe store, they learned that the suspects' van was at a local dealership for repairs. The police apprehended the suspects there[,] after Mr. Griffin identified himself. Mr. Griffin and Ms. Greathouse were arrested and the police recovered Mr. McGinnis' Social Security card from Mr. Griffin's pocket.

Mr. Griffin waived his Miranda rights and gave written and videotaped statements following the arrest. Mr. Griffin told police that on the day of the murder, he and Ms. Greathouse picked up Mr. McGinnis in his van, they went to cash their paychecks, and then they went to the park, where Mr. Griffin and Ms. Greathouse told Mr. McGinnis that they had a package to pick up. All three got out of the van and went to the swings in the park. Mr. Griffin carried a bat with him and after a few words, some shoving and pushing occurred. Mr. Griffin grabbed the bat and hit Mr. McGinnis in the head knocking him to the ground. He hit him several times and then told Ms. Greathouse to go get his knife. He stabbed him with a buck knife several times. Mr. Griffin testified about the incident at trial.

After Mr. McGinnis was dead, they took him to the woods, dug a grave, buried him with sticks and brush, and took his money. Later the same day, Ms. Greathouse purchased a man's wedding band for Mr. Griffin from a jewelry store, and then the couple fled north towards Canada.

A jury convicted Mr. Griffin of first-degree murder, armed criminal action, and robbery in the first degree. The Honorable Larry D. Harmon sentenced him to life imprisonment without the possibility of parole for first-degree murder, a concurrent term of ten years for the robbery, and a consecutive term of thirty years for armed criminal action. This appeal

followed.

(Respondent's Exhibit "8," pp. 1-3)

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1 - VENIREPERSON SHADA

In Ground 1, petitioner alleges that the trial court erred when it failed to sua sponte strike Venireperson Shada for cause because she indicated that she could not be impartial due to the recent stabbing of a coworker. Respondent contends that this ground for relief is without merit.

On direct appeal, the Missouri Court of Appeals held as follows:

> Mr. Griffin argues that the trial court had an obligation to strike Venireperson Betty Shada for cause on its own motion because she indicated that she could not be an impartial juror due to her emotional response to the recent stabbing of a fellow employee at the hospital where she worked. Further, he claims that the trial court's failure to strike Venireperson Shada denied him his right to due process and a fair trial by

---

[1] In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-4-

an impartial jury causing a manifest injustice.

During voir dire[,] the state asked the panel whether anyone would be unable to render a fair and impartial decision based on a past experience that would cause ill will towards the defendant. Venireperson Sheila Cutbirth raised her hand. According to the transcript, the state asked her to state her name; she did, and then continued to explain that she had an acquaintance at the hospital where she worked who was stabbed in the hospital parking lot. When the state asked "Which hospital?" The transcript indicated Venireperson Shada responded, "Menorah in Kansas City," as if she was the one who gave the statement regarding the incident in the hospital parking lot. The transcript continues to make reference to Venireperson Shada while the state probes the prospective juror regarding the stabbing incident at the hospital. The transcript also indicated that Ms. Shada admitted that she would "have a little trouble" presuming Mr. Griffin's innocence. Therefore, Mr. Griffin alleges that the trial court had an obligation to *sua sponte* strike Ms. Shada because she could not be a fair and impartial juror.

Venireperson Cutbirth's name, nor any reference to her, is ever made again until Mr. Griffin moves to strike her for cause. Our research did not uncover any other reference in the transcript besides the initial response Ms. Cutbirth gave regarding the attack at the hospital that would justify striking her.

After reviewing the transcript, we found that the references between Ms. Shada and Ms. Cutbirth were confusing at best, and it appeared highly coincidental that both venirepersons experienced the same incident at the same hospital. After carefully considering both parties' arguments, we requested juror qualification forms from the Lafayette County Circuit Court for both Ms. Shada and Ms. Cutbirth so that we could determine which venireperson worked at Menorah Hospital. Our authority can be found in Rule 30.04(h) which states that if anything is omitted in the record on appeal, the court can correct that mistake or omission on its own motion by requesting that the clerk of the trial court supply the additional part of the record.

The circuit court clerk sent the qualification forms via facsimile. They revealed that Ms. Cutbirth was the only one employed at Menorah Hospital. Ms. Shada was retired and appeared to have no employment connection within the medical profession based on her last occupation and employer. Therefore, the qualification forms clearly demonstrate that the

-5-

references to Ms. Shada in the transcript should have been to Ms. Cutbirth, and the error was in the transcription. Thus, the prospective juror who indicated that she could not be a fair and impartial juror, was Ms. Cutbirth, and Mr. Griffin struck her for cause. Therefore, no prejudicial error occurred. Point denied.

(Respondent's Exhibit "8," pp. 4-5) (citations omitted).

The resolution of Ground 1 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Terry Williams v. John Taylor, 529 U.S. 362, 412-13 (2000).[2]

Ground 1 is denied.

## GROUND 2 - PHOTOGRAPHS OF THE VICTIM

In Ground 2, petitioner alleges that the trial court erred in admitting into evidence four photographs of the victim, three of which were of the victim after he was deceased, because the photographs were irrelevant and prejudicial. Respondent contends that this ground for relief is without merit.

As a preliminary matter, this ground for relief raises an evidentiary issue. "Questions relating to the admissibility of evidence are matters of state law and generally do not give rise to constitutional errors which

---

[2] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13.

are subject to redress in federal habeas corpus cases." Harrison v. Dahm, 880 F.2d 999, 1001 (8th Cir. 1989) [quoting Maggitt v. Wyrick, 533 F.2d 383, 385 (8th Cir.), cert. denied, 429 U.S. 898 (1976)]. Only if the alleged error violates a specific constitutional right or is so prejudicial that it denies due process may a federal court grant habeas corpus relief on a state evidentiary issue. Clark v. Groose, 16 F.3d 960, 963 (8th Cir. 1994).

On direct appeal, the Missouri Court of Appeals held as follows:

> Next, Mr. Griffin claims that the trial court erred by admitting into evidence four photographs: (1) Exhibit 6, a picture of the deceased on his 16th birthday; (2) Exhibit 39, the decedent's body at the scene; (3) Exhibit 40, the jacket found on the decedent's body; and (4) Exhibit 80, the stab wound to the decedent's heart taken during the autopsy. He contends that the pictures inflamed the passions of the jury and induced it to make a guilty finding based on emotion rather than on evidence.
> 
> The trial court has broad discretion in deciding whether to admit evidence, and we will not disturb its decision to do so unless a clear abuse of discretion is shown. In Missouri, photographs of the victim are generally admissible where they are relevant to a material issue or help the fact finder to better understand a witness' testimony. Abuse of discretion is a ruling clearly against the logic of the circumstances, so arbitrary and unreasonable as to shock the sense of justice, and lacking careful consideration. A trial court has great discretion when determining the admissibility of evidence. "We will not reverse unless there is a substantial or glaring injustice."
> 
> Exhibit 39 contained relevant information showing how the victim looked at the time of his death. In Rousan[, 961 S.W.2d 831, 844 (Mo. banc 1998)], a photograph depicting the victims' bodies, which had lain in the ground for about a year, was admitted into evidence. The court has broad discretion in the admission of photographs which are relevant to show the scene of the crime and the condition and location of the body. Thus, we find no error in its admission.
> 
> Mr. Griffin argues that Exhibit 40 should not have been admitted over objection because it was cumulative since the jacket itself was going to be introduced. Furthermore, he claims the photograph was inflammatory

-7-

> because it emphasized the blood on the jacket. The jacket was found at the scene on the decedent's body. A photograph is not rendered inadmissible simply because other evidence described what is shown in the photograph. Identifying characteristics which identify the body as the victim and connect it to the crime are admissible when accompanied by corroborating testimony. This photograph was admitted to corroborate April Price's testimony, which stated that Mr. McGinnis wore a Green Bay Packers coat to her check-cashing window, and Officer Robert Raybourn, who stated that he saw two figures dressed in Starter jackets near the location where the decedent was found dead. Therefore, Exhibit 40 was admissible.
>
> The photograph of the stab wound to Mr. McGinnis' heart, Exhibit 80, was also admissible. Mr. Griffin claims that the photograph had no probative value. Photographs are relevant if they show the nature and extent of the wounds, the cause of death, or otherwise constitute proof of an element of the crime or assist the jury in understanding the testimony. The exhibit was relevant and admissible to demonstrate the heart wound and to assist the jury during the medical examiner Dr. Thomas Young's testimony describing the wound.
>
> Finally, the picture of the decedent at his birthday party prior to the murder is also admissible. Mr. McGinnis claims that it induced sympathy from the jury and was irrelevant to the proceedings. The state argues that the picture was relevant to identify the victim. A photograph is relevant for identification purposes, and it "will not be found inadmissible because ... other evidence could have described what is depicted in the photo." Therefore, the trial court did not abuse its discretion in admitting the photograph." Point denied.

(Respondent's Exhibit "8," pp. 5-8) (citations omitted).

The resolution of petitioner's second ground for relief by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Terry

Williams v. John Taylor, supra.

Ground 2 is denied.

## **GROUND 3 - VOIR DIRE QUESTIONING**

In Ground 3, petitioner alleges that the trial court erred when it sustained the prosecution's objection to defense counsel asking the jury during voir dire if "true love" had ever affected their judgment. Respondent contends that this ground for relief is without merit.

On direct appeal, the Missouri Court of Appeals held as follows:

> In his third point, Mr. Griffin contends that the trial court erred by restricting the defense in questioning the venirepersons concerning their attitude about a persons' reaction to the someone insulting his "first love." The purpose for the questioning was to establish that Mr. McGinnis made lewd remarks to Mr. Griffin about Ms. Greathouse, which led to Mr. Griffin's plan to beat up Mr. McGinnis, not to kill him. Further, Mr. Griffin argues that the restriction on voir dire deprived him of the ability to make informed challenges for cause and preemptory strikes.
>
> The voir dire proceeding stated in pertinent part:
>
>> [Defense]: Does anyone remember or think back to when they were in high school? ... Can anyone remember anything about their first love?
>>
>> [State]: I'm going to object as an improper question for voir dire.
>>
>> [The Court]: Come up. Where are you going with this?
>>
>> [Defense]: Basically, I'm not going to get into real details of it, but I'm going to get into the nature of the relationships with people, of their first love and what happens in a relationship. Because I know, certainly, the prosecutor is going to get into it. I mean, that's why they're bringing in the Eldridge Jewelry, the ring and that. I mean, this is all, has to do about a relationship between two kids and, you know, in high school, and what

happens out of that relationship.

[State]: It has to do with them going shopping after they killed somebody. That's why I'm offering it, complete lack of remorse, complete lack of or indifference towards human life. That's why it's being offered. It's not because, necessarily, they were in love, that's not why because it shows them together.

[The Court]: Can you be a little more precise as to why you think this is relevant to whether or not a juror could serve on this case, given this issues [sic] that will be presented as evidence in this case?

[Defense]: It can go to whether or not they can consider that a person would do something for another person because they loved them, and they would be willing –

[The Court]: I'll allow a limited inquiry–

\*\*\*

[Defense]: ... Tell me, is there anyone here wouldn't have done anything that [the first person you fell in love with] would have asked [you] to do?

[State]: Objection, improper question.

[The Court]: Sustained.

[Defense]: Is there anyone here that, thinking about their first love, that if someone said something bad to you, and it may have happened to you, and someone comes up and says something bad about this person you're in love with, is there anyone here who didn't have that experience, as far as someone saying something bad, really not nasty just something, you know, not quiet nice about them.
*(No response)*

[Defense]: Is there anyone here that, when they experienced that first love, that there isn't, they wouldn't

-10-

have stood up for them? That they would have protected them?

[State]: Judge, I'm going to have to object, this is argumentative, it's seeking a commitment and it's an improper question.

\*\*\*

[The Court]: Is this something that's an issue in this case? Is self-defense of the defendant or another person an issue in this case?

[Defense]: Technically not.

[The Court]: Sustained.

[Defense]: Judge, I know you've ruled, but just, I'd like to reopen that as far as the question goes to the theory of defense in there were inappropriate sexual remarks made to the defendant by Jesse McGinnis, and that's the reason for the fight, which would be, goes towards the murder.

[The Court]: Is self-defense a justification or do you have some theory under the law —

[Defense]: If it would go to felony murder, as far as that he took him out there to beat him up and that, unfortunately, he didn't mean to kill him, he ended up killing him, but it would go [to] the fact that he went out there with the purpose of beating him up, not to kill him.

[State]: As I understand defense counsel's theory, apparently, judge, is that sticks and stones, the only threat they can say words that somehow justifies a violent act. No theory of the law supports that, and to allow that plan of argument in closing even to make that inference that somehow he was justified –

[The Court]: Sustained.

The state, however, argues that Mr. Griffin was asking for commitments

-11-

> from the jurors, and that this questioning would not have revealed bias as to the critical fact in the case.
>
> "A defendant has a right to discover bias or prejudice on the part of prospective jurors during *voir dire*. This is a right to participate in *voir dire*, not to dictate how *voir dire* is conducted. The trial court is vested with wide discretion in the conduct of *voir dire*." The nature and extent of questioning on *voir dire* is within the discretion of the trial judge. We review the trial court's actions for abuse of discretion. Where appellant claims the trial court abused its discretion, appellant has the burden of showing a "real probablity that he was thereby prejudiced."
>
> The defendant has the constitutional right to a fair and impartial jury. "The essential purpose of *voir dire* is to provide for the selection of a fair and impartial jury through questions which permit the intelligent development of facts which may form the basis of challenges for cause, and to learn such facts as might be useful in intelligently executing preemptory challenges." "It is the duty of a juror on *voir dire* examination to fully, fairly, and truthfully answer all questions directed to him (and to the panel generally) so that his qualifications may be determined and challenges maybe intelligently exercised." *Voir dire* gives the parties an opportunity to gather information that might disclose a potential juror's specific bias." "Information likely to disclose a general bias against a party must be developed by questions designed to clearly establish the existence of such a sweeping bias." Not every fact, however, is required to be disclosed to the prospective jury. Only critical facts, which have substantial potential for disqualifying bias, need be revealed.
>
> Mr. Griffin had his opportunity to *voir dire* the panel about whether anyone had experienced a time when someone said something negative about their "first love" or someone they were currently in love with, without objection. No one responded, which indicated that the venirepersons did not experience such an incident. Furthermore, this was not a critical fact that needed exposure. Point denied.

(Respondent's Exhibit "8," pp. 8-12) (citations omitted).

The resolution of petitioner's third ground for relief by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an

-12-

unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Terry Williams v. John Taylor</u>, <u>supra</u>.

Ground 3 is denied.

## GROUND 4 - WEDDING BAND TESTIMONY

In Ground 4, petitioner alleges that the trial court erred when it overruled his objection to testimony concerning Ms. Greathouse's purchase of a men's wedding band on the day of the murder because its probative value was outweighed by its prejudicial effect in that it tended to show that petitioner was not emotionally affected by the murder. Respondent contends that this ground for relief is without merit.

As previously mentioned, because petitioner's fourth ground for relief raises a state evidentiary issue, habeas relief may only be granted if the alleged error violates a specific constitutional right or is so prejudicial that it denies due process. <u>Clark v. Groose</u>, 16 F.3d at 963.

On direct appeal, the Missouri Court of Appeals held as follows:

> Finally, Mr. Griffin contends that the trial court erred by allowing the jewelry store clerk to testify, despite his objection, regarding Ms. Greathouse's purchase of the wedding band immediately following the murder. Mr. Griffin filed a motion in limine to exclude any evidence relating to the purchase of the wedding ring because he claimed its prejudicial effect outweighs its probative value, thereby suggesting that he was not affected by the murder that just occurred. The state, however, argues that the evidence was admissible and relevant to show Mr. Griffin's whereabouts following the murder and that the couple remained together while on the run.
>
> The trial court has broad discretion in deciding whether to admit evidence, and we will not disturb its decision to do so unless a clear abuse of discretion is shown. For evidence to be admissible, it must be logically relevant, tending to prove a fact in issue or corroborate relevant evidence that bears on the principle issue. Furthermore, "evidence is admissible if

-13-

> it tends to establish motive, intent, absence of mistake or accident, common scheme or plan, or identity of a defendant, or the evidence is otherwise logically and legally relevant."
>
> Mr. Griffin was charged with first degree murder, which occurs when a person "knowingly causes the death of another person after deliberation upon the matter." Deliberation is defined as "cool reflection for any length of time no matter how brief." Deliberation may be proved by indirect evidence and inferences reasonably drawn from circumstances surrounding the killing. "A defendant's presence, opportunity, companionship, conduct, and flight are circumstances from which his purpose or intent maybe inferred."
>
> The jewelry store clerk's testimony was admissible and probative on the issue of Ms. Greathouse and Mr. Griffin's' intent, plan or motive. The defendant's actions following the murder can also be evidence of his intent and deliberation. It is reasonable to assume that if just hours after the murder Ms. Greathouse purchased a wedding band for Mr. Griffin, which was confiscated from his finger upon his arrest, that the couple demonstrated a "somewhat chilling nonchalance about events" following the murder. Shopping for a wedding ring immediately following the murder is an indication of the couple's complete state of indifference to the death of Mr. McGinnis. Their actions following the murder also showed that they acted with deliberation. Point denied.

(Respondent's Exhibit "8," pp. 12-13) (citations omitted).

The resolution of petitioner's fourth ground for relief by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Terry Williams v. John Taylor</u>, <u>supra</u>.

Ground 4 is denied.

## **GROUNDS 5, 6, 7, 8, 9, 10, 11, 12, & 13 - PROCEDURAL DEFAULT**

In Ground 5, petitioner alleges that his trial counsel was ineffective for failing to supply the trial court with competent evidence of the juvenile laws of South Dakota. In Ground 6, petitioner alleges that his trial counsel was ineffective for failing to file a motion to suppress petitioner's statements to the police and for failing to object to the admission of those statements into evidence during trial. In Ground 7, petitioner alleges that his trial counsel was ineffective for failing to introduce the testimony of Sheriff Jeff Lawhon and Arthur Griffin concerning petitioner's emancipation. In Ground 8, petitioner alleges that his trial counsel was ineffective for failing to object the prosecution's statement during closing argument that it was "defendant's judgment day" and "defendant judged Jessie [sic] McGinnis." In Ground 9, petitioner alleges that his trial counsel was ineffective for failing to object to the prosecutor's argument concerning "blood release" from the victim. Petitioner also alleges that trial counsel was ineffective for failing to have that argument stricken from the record and for failing to request a curative instruction regarding that argument. In Ground 10, petitioner alleges that his trial counsel was ineffective for failing to object to the prosecution's closing argument that the jury "can send a message to society" with its verdict. In Ground 11, petitioner alleges that his trial counsel was ineffective for talking to the jury during closing argument about "murders in Kansas City of women that are put in the river and they float down." In Ground 12, petitioner alleges that his trial counsel was ineffective for questioning a prosecution witness regarding the size of the victim's grave when that issue had been the subject of a defense motion in limine, which had been sustained by the trial court. In Ground 13, petitioner alleges that his direct appeal counsel was ineffective for failing to raise on appeal trial court error in denying petitioner's motion for judgment of acquittal at the close of the state's evidence and motion for judgment of acquittal at the close of all evidence.

Respondent contends that Grounds 5, 6, 7, 8, 9, 10, 11, 12 and 13 are procedurally defaulted

because they were not raised on appeal from the denial of petitioner's motion for post-conviction relief. The record reflects that respondent is correct.

In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

On appeal from the denial of his motion for post-conviction relief, petitioner's sole ground for relief was an allegation that his trial counsel was ineffective for advising him to testify on his own behalf in order to save his co-defendant, who was also petitioner's fiancée, from the death penalty. Grounds 5, 6, 7, 8, 9, 10, 11, 12 and 13 were not raised on appeal from the denial of petitioner's motion for post-conviction relief. (See Respondent's Exhibit "13," p. 3). Consequently, these grounds for relief are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). This Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

In his reply (Doc. No. 13), petitioner concedes that these grounds for relief are defaulted. However, he claims that although these claims were raised in his original motion for post-conviction relief, they were abandoned on appeal by post-conviction appellate counsel. Petitioner contends that

-16-

abandonment should excuse his default of Grounds 5-13 because in the case of State ex rel. Nixon v. Jayes,³ Missouri recognized that abandonment by counsel could excuse procedurally defaulted claims.

Irrespective of petitioner's contentions regarding Missouri law, his allegation of ineffective assistance of post-conviction appellate counsel as the basis for his procedural default must fail. Because there is no constitutional right to an attorney in state post-conviction proceedings, see, e.g., Pennsylvania v. Finley, 481 U.S. 551, 555-59 (1987), ineffective assistance of post-conviction relief counsel cannot excuse state procedural default, Coleman v. Thompson, 501 U.S. at 752; Boyd v. Delo, 999 F.2d 1286, 1288 (8th Cir. 1993); Nolan v. Armontrout, 973 F.2d 616, 617 (8th Cir. 1992).

Even though petitioner has failed to demonstrate cause (and, therefore, we do not consider prejudice) for his procedural default, the Court can still reach the merits of his claims if he can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). A review of the record reflects that petitioner has failed to satisfy this test.

Petitioner has failed to show cause for and prejudice from his default of Grounds 5, 6, 7, 8, 9, 10, 11, 12, and 13. He also has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of these allegations is not required to prevent a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. at 495.

---

³ 63 S.W.3d 210 (Mo. 2001).

-17-

Grounds 5, 6, 7, 8, 9, 10, 11, 12, and 13 are denied.

## GROUND 14 - STANDARD OF REVIEW

In Ground 14, petitioner alleges that the State of Missouri's "preponderance of the evidence" standard for post-conviction relief violates the Constitution and the United States Supreme Court's holding in Strickland v. Washington, supra. Other than citing the applicable Missouri statute, petitioner makes no arguments in support of his claim. Respondent contends that this ground for relief alleges an infirmity in a state post-conviction proceeding, which is not cognizable in a federal habeas corpus petition. Respondent cites Gee v. Groose, 110 F.3d 1346, 1351-1352 (8th Cir. 1997) in support of his contention. The Court find's petitioner's claim to be without merit.

In Strickland v. Washington, the United States Supreme Court set forth the proper standard of review for ineffective assistance of counsel claims, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. On appeal from the denial of petitioner's motion for post-conviction relief, the Missouri Court of Appeals stated the following standard of review:

> On a claim of ineffective assistance of counsel, the burden is on the movant to prove by a preponderance of the evidence (1) that counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. [Ervin v. State, 80 S.W.3d 817, 822 (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674 (1984))].

(Respondent's Exhibit "13," p. 2).

Petitioner appears to allege that because Missouri requires proof by a preponderance of the

-18-

evidence, it has violated the "reasonable probability" standard that is applicable to the prejudice prong of Strickland. However, petitioner's argument is without merit. The record reflects that the Missouri Court of appeals applied the proper standard, as cited herein. See Holland v. Jackson, 542 U.S. 649 (2003) (holding that a state court properly applied Strickland in its prejudice analysis after reciting the reasonable probability standard).

Ground 14 is denied.

## **ORDER**

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for writ of habeas corpus is denied; and

(2) this case is dismissed with prejudice.


   /s Ortrie D. Smith
ORTRIE D. SMITH
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri
Dated:   12/28/05